■ In the Matter of TYQUAN W., a Person Alleged to be a Juvenile Delinquent, Respondent. PRESENTMENT AGENCY, Appellant. [920 NYS2d 180]—

The Family Court improperly granted that branch of the petitioner's motion which was to suppress the identification testimony of Cheynnia W. The viewing of a photo array by two witnesses in the same room, by itself, does not taint either witness's identification testimony (*see People v Seymour*, 77 AD3d 976 [2010]). However, evidence of communication between the two witnesses may support the presence of such taint (*id.*). Here, the two witnesses, who are sisters, were interviewed simultaneously and then shown photo books while still in the same room. Cheynnia W. first and independently identified the respondent in the photo books. After Danetta P. saw and heard her sister identify that photo, she too identified the respondent's photo. The Family Court held that the photo array procedure employed in this case was unduly suggestive and ordered an independent source hearing.

Since the sisters communicated before the second sister identified the respondent, the Family Court properly determined that the second sister's identification was tainted. However, there is no evidence in the record that the sisters communicated regarding the contents of the photo books prior to the first sister's identification of the respondent. Nor was anything said during the initial interview of the two sisters together which could have influenced or tainted the first sister's identification. Accordingly, that identification was proper, and it was error for the Family Court to have granted suppression (*id.*; *see People v Rodriguez*, 17 AD3d 1127, 1129 [2005]).

At the independent source hearing, the presentment agency

failed to establish by clear and convincing evidence that the in-court identification of the respondent by Danetta P. was based upon the witness's independent observation of the respondent (*People v Chipp*, 75 NY2d 327, 335 [1990], *cert denied* 498 US 833 [1990]; *cf. People v Reynoso*, 231 AD2d 592, 593 [1996]). In light of our determination, we need not address the present-ment agency's contention that the Family Court should not have precluded Cheynnia W. from making an in-court identifica-tion of the respondent at the independent source hearing.

The parties' remaining contentions are without merit. Angiolillo, J.P., Roman and Cohen, JJ., concur.

Hall, J., dissents and votes to affirm the order appealed from, with the following memorandum: I respectfully dissent. I agree with the majority's determination that the identification testimony of Danetta P., the second sister who identified the re-spondent, was properly suppressed. However, in my view, the Family Court also properly suppressed the identification testimony of Cheynnia W., the first sister who identified the re-spondent from the photo array, because the photo array proce-dure employed in this case was improper.

The two witnesses who were sisters, Cheynnia W. and Danetta P., were interviewed by a detective in the same room. Both sisters gave descriptions of the respondent to the detective, which were "[b]asically the same." After Cheynnia W. pointed out the respondent in one of the photo books, Danetta P., who was sitting close to Cheynnia W., looked over at the book and then identified the respondent. Considering these facts and cir-cumstances, I find that the People failed to establish in the first instance that the photo array procedure employed was not un-duly suggestive (*see People v Chipp*, 75 NY2d 327, 335 [1990], *cert denied* 498 US 833 [1990]).

In my view, the cases relied on by my colleagues, *People v Seymour* (77 AD3d 976 [2010]) and *People v Rodriguez* (17 AD3d 1127 [2005]), are distinguishable. In *Seymour*, there was conflicting evidence as to whether the first witness may have been present in the room when the second witness viewed the photo array (77 AD3d at 976). This Court held that such evi-dence would not, by itself, taint the second witness's identifica-tion testimony, absent evidence of communication between the two witnesses (*id.*). No evidence of communication between the witnesses was present in *Seymour*. Similarly, in *Rodriguez*, the Appellate Division, Fourth Department, held that, contrary to the defendant's contention, the fact that a witness viewed the photo array while a second witness was in the room did not taint the witness's identification of the defendant's photograph

in the photo array (17 AD3d at 1129). The Fourth Department noted that there was no evidence of communication between the two witnesses (*id.*)

Here, in contrast to *Seymour* and *Rodriguez*, the two witnesses were interviewed in the same room. Each witness was present for the other's description of the perpetrator directly prior to viewing the photo books. As I see it, the interviewing of the two witnesses in the same room was tantamount to "communication" between the witnesses here. The Family Court, thus, properly found that the photo array procedure employed in this case was unduly suggestive (*see People v Chipp*, 75 NY2d at 335). Furthermore, at the independent source hearing, the presentment agency failed to establish an independent source for Cheynnia W.'s identification by clear and convincing evidence (*id.*). Accordingly, I respectfully dissent.